UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOLOMON AGENCY CORP., <br><br> Plaintiff, <br><br> -against- <br><br> SUK JUN CHOI, a/k/a JUNE CHOI, <br><br> Defendant. | Case No. 1:16-cv-00353-LDH-RML <br><br> **DECLARATION OF YONG HWA HA IN SUPPORT OF PLAINTIFF SOLOMON AGENCY CORP.'S REPLY TO DEFENDANT JUNE CHOI'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

Yong Hwa Ha hereby declares as follows:

1.      I am the CEO and President of plaintiff Solomon Agency Corp. ("Solomon"), and I make and submit this Declaration in support of Solomon's Reply to Defendant June Choi ("Choi")'s Opposition to Plaintiff's Motion for a Preliminary Injunction based upon my own personal knowledge.

2.      I founded Solomon, which is an insurance brokerage company with a principal place of business in Bayside, Queens, in 1992.

3.      Solomon hired Choi, then a Korean national, in 2004, originally pursuant to a temporary work visa. While he was at Solomon, Choi held a variety of positions with Solomon, ultimately being promoted to become a Senior Director in charge of E-Benefits Solution ("EBS"), an affiliate under Solomon, in 2012. During Choi's tenure at Solomon as the head of EBS, I entrusted him with the authority and discretion to manage the affiliate. I also believed Choi and I together developed special personal trust throughout his years at Solomon, and I trusted his loyalty to Solomon which enabled him to develop his career in the industry and to ultimately become the head of an affiliate specializing in employment benefit plans.

4.  Solomon's relationship with SK USA, Inc. ("SK"), an important Solomon client and one of the largest Korean corporations operating in the United States, dates back to 2007.

5.  Solomon and Choi entered into an employment agreement on January 9, 2014 containing the subject restrictive covenants. While Solomon employees generally are considered "at-will" employees, the employment relationship becomes elevated when Solomon and an employee enter into a written agreement. On or about January 9, 2014, both Choi and I signed the agreement, but I did not personally present the agreement to Choi for his signature. Moreover, I did not threaten to withhold Choi's bonus if he did not sign, nor, to the best of my knowledge, did anyone else at Solomon.

6.  Choi was the one who suggested the restrictive covenant language in the employment agreement to me and other senior executives at Solomon. Attached is an email which Choi sent me on November 10, 2011 attaching the draft employment agreement which is virtually identical to the one at issue. A copy of the email (with an English translation) is annexed hereto as Exhibit A.

7.  Every year, Solomon paid Choi a bonus and gave him a compensation raise. This was in consideration of my deep trust of Choi. However, in late 2014, I discovered that although the EBS revenue increased annually, there was, in fact, a decrease in Solomon's marginal profit for EBS. With respect to the SK account in particular, commission was under 2 percent, which was far below the industry standard.

8.  In addition, I repeatedly reminded Choi of the importance of properly training the EBS staff to service the SK account. At one point, I even asked him what would happen if he were to get ill. He replied that he will never get sick.

9. Concerned about the diminishing marginal profits as well as his lone wolf approach without training staff, in the beginning of 2015, I personally wrote a letter to Choi to formally voice my concerns, requesting that EBS under his direction improve the net income structure, and that he focus his efforts on training other Solomon employees to perform the administrative and client servicing tasks. I told him that despite the decrease in profits, I decided to honor Choi's request for a salary raise and a bonus for the 2014 calendar year, but placed him under warning that unless he improved on both fronts, he would not receive a raise or a bonus for the 2015 calendar year.

10. Choi made no improvement in training Solomon staff or increasing the marginal profit. Instead, Choi chose to resign from Solomon in May 2015. Choi left Solomon's remaining EBS staff under-trained, contrary to Choi's Affirmation that he properly trained the named Solomon employees (Choi Affirmation Para. 12). After Choi resigned, he constantly demeaned James Lee, a Solomon employee who took over his accounts.

11. I met with Choi after his resignation to discuss ways to achieve a smooth transition in servicing SK's self-funded employee benefit plans. In exchange for his help to Solomon in achieving a smooth transition, I agreed to pay him hourly and also to pay him a six months severance payment. Solomon continued a relationship with Choi through December 2015 only for the purpose of transitioning the SK account.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is accurate and correct.

Dated: March 2, 2016

Yong Hwa Ha